UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NATIONAL PRESORT, INC., § | |
|    Plaintiff, § | |
| § | |
| v. § | Civil Action No.:3:08-CV-1741-O |
| § | |
| BOWE BELL + HOWELL COMPANY, § | |
|    Defendant. § | |

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

Before the Court is Defendant's Motion to Dismiss (Doc. #6) filed on January 12, 2009 (the "Motion"). Having considered the Motion, related briefing, and the applicable law, the Court finds that it should be and is hereby **GRANTED**.

I.   Background

Plaintiff National Presort, Inc. ("Plaintiff" or "NPI") filed this lawsuit on October 1, 2008, alleging that Defendant Bowe Bell + Howell Company ("Defendant" or "BB+H") has threatened Plaintiff with litigation relating to two patents held by Defendant, Patent No. 5,912,979 ("979 Patent") and Patent No. 6,078,678 ("678 Patent"). Based on these allegations, NPI brings claims under the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, and seeks: (1) a judgment declaring that BB+H's 979 and 678 patents are not and have not been infringed by any of NPI's products, (2) a judgment declaring that BB+H's 979 and 678 patents are invalid, (3) an injunction preventing BB+H from suing to enforce the 979 or 678 patents against NPI, and (4) an award of attorney fees and costs.

On January 12, 2009, Defendant BB+H filed the instant Motion to Dismiss.[1]   BB+H

---

[1]Originally, Defendant's motion was a Motion to Dismiss or, Alternatively, to Stay. However, in a Supplement to the Motion filed March 25, 2009 (Doc. # 19), Defendant informed

contends that it has not threatened NPI and that NPI has failed to meet its burden of showing an actual case or controversy to support subject matter jurisdiction. BB+H asks the Court to dismiss the action under Federal Rule of Civil Procedure 12(b)(1).

Plaintiff NPI responds that it has shown a case or controversy to support subject matter jurisdiction by showing a reasonable apprehension that BB+H intends to file a patent infringement action against NPI. To support its allegation, NPI points to the fact[2] that BB+H has refused to agree to a covenant not to sue NPI for infringement of patents 678 and 979 and has instead proposed a mutual licensing agreement between the parties. *June 2008 Letter* (Exhibit A to Doc. #11). NPI also points to two grounds that are presented for the first time in Plaintiff's Response to the Motion to Dismiss (Doc. #11) filed January 30, 2009.

The first is an exchange of emails (the "July 2008 Emails") between Defendant BB+H and MidSouth Technologies, LLC ("MidSouth"), a recently acquired subsidiary of Plaintiff NPI. *See, Plaintiff's Response to Motion to Dismiss* (Doc. # 11) at 2; *See also, July 2008 Emails* (Exhibit B to Doc. #11). In the email exchange, an attorney representing BB+H suggests that a software advertisement conflicts with a pending settlement agreement in a suit between BB+H and MidSouth concerning the 979 and 678 patents (the "MidSouth suit").[3]

---

the Court that the alternative request to stay this case is now moot.

[2] This is the only ground offered in NPI's Original Complaint to support NPI's allegation of a "substantial and continuing justiciable controversy" between the parties. *Plaintiff's Original Complaint* (Doc. #1) at 3.

[3] A summary of the complex relationship follows: BB+H and MidSouth first had a dispute involving Patents 678 and 979. In 2004, MidSouth filed for declaratory judgment in Oklahoma seeking a finding of noninfringement of the patents by MidSouth's products. In response, Defendant filed suit in 2005 in Illinois asserting MidSouth's infringement. The cases were consolidated in Oklahoma and have, since the time this Motion was filed in early 2009, been dismissed. *See, MidSouth Technologies, LLC v. Bowe Bell+Howell Company*, No. 04-CV-822, (N.D. OK 2009). In 2007, NPI acquired MidSouth and attempted to alter the pending settlement

Second, NPI points to BB+H's refusal to agree, as part of the MidSouth suit settlement agreement, to venue in Dallas should it decide to sue MidSouth for the sale of NPI's software. *Plaintiff's Response to Motion to Dismiss* (Doc. #11) at 2–4.

The issues have been briefed by the parties and this matter is ripe for determination.

II.     Rule 408 Objection

As a preliminary matter, the Court will address BB+H's motion to strike, found in BB+H's Corrected Memorandum in Support of Its Motion to Dismiss (Doc. #9) filed on January 14, 2009, at 6–7. *See also, Defendant's Reply in Support of Its Motion to Dismiss* (Doc. #16) at 8–10. BB+H asks the Court to strike, under Rule 408 of the Federal Rules of Evidence, a letter regarding the MidSouth settlement negotiations, sent on June 5, 2008 from Kenneth Jurek, attorney for BB+H to Noreen Grant, attorney for MidSouth ("June 2008 Letter"). *June 2008 Letter* (Exhibit C to Doc. #1).

Rule 408 generally provides that "conduct or statements made in compromise negotiations regarding" a disputed claim are "not admissible...when offered to prove liability for...or amount of the claim" that was in dispute at the time the statements were made. FED. R. EVID. 408.

The letter at issue was sent in the course of settlement negotiations in the MidSouth case between MidSouth and BB+H. The letter states that BB+H is willing to accept MidSouth's settlement offer with one exception. "Rather than covenanting not to sue NPI under the '678 and '979 patents...BB+H would license NPI under those patents in return for a cross-license from NPI to BB+H under [three patents owned by NPI]." *June 2008 Letter* (Exhibit C to Doc. #1).

The policy behind Rule 408 is to promote settlement negotiations by removing the fear that any communications made in furtherance of the negotiation will later be used against one of the

---

agreement between MidSouth and BB+H in the MidSouth suit. BB+H's resistance for these alterations, as explained *infra*, form the basis of NPI's allegation of a "reasonable apprehension of suit" for patent infringement brought by BB+H against NPI.

parties. *See*, ADVISORY COMMITTEE NOTE TO FED. R. EVID. 408, 56 F.R.D. 183, 226; CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE § 4.25 (3d ed. 2003). This policy supports BB+H's contention that the June 2008 Letter should be excluded from this case, as it was sent in BB+H's good faith furtherance of settlement negotiations and is being used against BB+H.

However, as NPI correctly points out, the June 2008 Letter does not fit within the plain text of evidence Rule 408 deems inadmissible– the statements contained in the letter are not being used to prove "liability for, invalidity of, or amount of" any claim. FED. R. EVID. 408(a); *Plaintiff's Response to Motion to Dismiss* (Doc. #11) at 1–2. Rather, they are being offered to establish jurisdiction[4] in this, a separate matter.

Further, Rule 408 goes on to expressly state that such evidence is not excluded under 408 if it is offered for purposes other than proof of liability for, invalidity of, or amount of a disputed claim. *See,* FED. R. EVID. 408(b). Here, the evidence is offered for a purpose other than those forbidden by Rule 408. It is offered to establish the existence of a case or controversy—a legitimate threat of litigation—between the parties. Therefore, Rule 408 does not foreclose admissibility of the evidence.

BB+H also points to violation of the Local Rules[5] of the Northern District of Oklahoma, the court that governed the MidSouth settlement. However, the local rule only forbids disclosure

---

[4] BB+H argues that NPI violates Rule 408 by attempting to use these statements in support of the "claim" that BB+H has engaged in acts sufficient warrant issuance of a declaratory judgment. *BB+H's Reply in Support of Its Motion to Dismiss* (Doc. # 16) at 8 n.2. However, BB+H cites no case law in support of this proposition, and the Court has found none. Support for this argument is arguably found in the policy behind Rule 408, but the text of the Rule does not support such a construction. The term "claim" as used in the Rule contemplates legal claims for or against liability of the parties. *See,* FED. R. EVID. 408. The Court is not convinced that the Rule contemplates the mere assertion (or "claim") that jurisdiction exists for a declaratory judgment. A party cannot be "liable" for jurisdiction.

[5] Defendant states, "[t]his was a clear violation of Local Rule LCvR16.2(i) of the

"unless otherwise permitted under Federal Rules of Evidence 408." Ultimately, therefore, this local rule merely reinforces Rule 408, and BB+H's reliance on the local rule fails for the same reasons its reliance on Rule 408 fails.

BB+H finally points out that even if the evidence is not barred by Rule 408, it is within this Court's discretion to refuse to admit the evidence after weighing the need for this "evidence against the potentiality of discouraging future settlement negotiations." *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106-07 (5th Cir. 1981)*; see also, Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984). Because the end result is the same in this case whether or not the evidence is admitted, the Court declines to exercise such discretion.

Accordingly, Defendant's motion to strike is denied.

III. Legal Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction which, without jurisdiction conferred by statute, lack the power to adjudicate claims. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

Plaintiff points to 28 U.S.C. §§ 2201, 2202, and 1338(a) as the statutory basis for this suit. However, these provisions require, as does Article III of the Constitution, an actual case or controversy before this Court is vested with subject matter jurisdiction. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008).

---

Northern District of Oklahoma, which provides that "[n]o communication relating to or occurring at a Court-ordered settlement conference may be used in any aspect of any litigation except proceedings to enforce a settlement agreed to at the conference..." *Defendant's Reply in Support of Motion to Dismiss* (Doc. # 16) at 9. The local rule continues, "unless otherwise permitted under Federal Rules of Evidence 408." *Appendix to Defendant's Reply* (Doc. #17) at A028.

### A.     Plaintiff Must Show a Controversy under the Totality of the Circumstances

As the party asserting subject matter jurisdiction, Plaintiff bears the burden of proving that an actual case or controversy exists by a preponderance of the evidence. *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993); 13 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3522 (3d ed. 2009). Plaintiff must show an actual case or controversy under "an objective standard" rather than a "subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008).

No bright-line legal rule exists for judging whether, pursuant to the DJA, a justiciable controversy is raised in an action seeking a declaration of patent non-infringement or invalidity. *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007); *Prasco* 537 F.3d at 1336. The determination must be made based on the particular facts of each case. *Id.* However, the basic standard is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune*, 549 U.S. at 127.

Prior to *MedImmune*, the Federal Circuit had generally required that a declaratory judgment plaintiff in a patent dispute demonstrate (1) conduct by the patentee that created a "reasonable apprehension" of suit on the part of the declaratory judgment plaintiff and (2) present activity by the declaratory judgment Plaintiff that could constitute infringement or "meaningful preparation" to conduct potentially infringing activity. *See, e.g., Glaxo Inc. v. Novopharm Ltd.*, 110 F.3d 1562, 1571 (Fed. Cir. 1997). Though the Supreme Court has rejected the reasonable-apprehension-of-suit test as the sole test for jurisdiction, it is still considered one of many ways that a declaratory judgment plaintiff might satisfy the totality of circumstances test in establishing the existence of a

justiciable controversy. *Prasco*, 537 F.3d at 1336; *Caraco Pharm. Labs. Ltd. v. Forest Labs.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008).

### B.   Scope of the Court's Review

In the Federal Circuit, there are two kinds of attacks on subject matter jurisdiction that may be presented under 12(b)(1). The first is a "facial" attack, which merely asserts that the pleading's allegations, even if true, are not sufficient to support jurisdiction. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). When a facial attack is presented, the well-plead allegations in the complaint are accepted as true and are viewed in a light favorable to the complainant. *Id.*

The second type of complaint is sometimes called a "factual" attack and is presented when the 12(b)(1) motion denies or controverts the factual basis of subject matter jurisdiction alleged in the pleading. *Id.* at 1583; *see also,* 13 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3522 (3d ed. 2009). When a factual attack is presented, only uncontroverted jurisdictional allegations of fact are accepted as true, and the court is free to review evidence outside of the pleadings to resolve jurisdictional factual disputes. *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583-84.

Having established the background of the case and the applicable law, the Court will now analyze whether Plaintiff NPI has established jurisdiction in this matter.

### IV.   Analysis

Defendant BB+H has filed a motion to dismiss. BB+H asks the Court to dismiss this declaratory judgment action under Federal Rule of Civil Procedure 12(b)(1) because there is no actual controversy between the parties to support subject matter jurisdiction. BB+H contends that it

has never threatened NPI with litigation and has not taken any action which would create reasonable apprehension by NPI that a patent infringement action was imminent or reasonably likely.

Plaintiff NPI responds that it has shown the existence of an actual case or controversy and points to particular facts in support of this contention. In support of its fear of litigation, NPI points first to the June 2008 Letter, next to the July 2008 Emails, and finally to the fact that BB+H will not agree to Dallas venue should it ever decide to sue MidSouth for selling NPI software, alleging infringement on the 678 and/or 979 patents.

Defendant BB+H replies with a factual attack on NPI's asserted basis for jurisdiction. BB+H controverts NPI's assertions by stating that NPI has mischaracterized the evidence, by stating that the parties have never even addressed whether NPI's products may infringe on BB+H's patents, and by providing further context and attaching evidence to support BB+H's characterization of the cited incidents. Because a factual attack is presented, the Court is not bound by the facts as alleged in NPI's complaint to determine whether an actual controversy has been presented. *Cedars-Siani Med. Ctr.*, 11 F.3d at 1583-84.

The Court will address each of NPI's asserted basis for existence of a controversy before examining the totality of the circumstances to determine whether NPI has met its burden of establishing subject matter jurisdiction.

### A. Basis Alleged in NPI's Complaint: the June 2008 Letter

In its complaint, NPI claims that BB+H has "threatened NPI with litigation relating to infringement...under these patents..." *NPI's Original Complaint* (Doc. #1) at 3. The only basis NPI provides in its complaint for the "threatened litigation," however, is the fact that BB+H, in the June 2008 Letter, "refuses to agree to a covenant not to sue NPI for infringement of said patents and demands a license on same." *Id.*; *June 2008 Letter* (Exhibit C to Doc. #1).

BB+H responds that the June 2008 Letter was not a threat of litigation and makes two distinct points in support of this contention.

      a. *Reading the June 2008 Letter in Context*

First, BB+H states that when read in context, the June 2008 Letter was nothing more than a counterproposal by BB+H in direct response to an offer by NPI and does not provide a reasonable apprehension of litigation against NPI. After reviewing the evidence, the Court agrees.

In relevant part, the June 2008 Letter reads:

> [BB+H] has evaluated your May 22 settlement proposal and herein makes a counterproposal in a good faith effort to resolve this matter without the need for further judicial intervention in this matter. Of course, this communication...is without prejudice to BB+H's efforts to enforce the prior settlement of [MidSouth and BB+H] should these negotiations be unsuccessful.
> BB+H's proposal is made in recognition that the MidSouth/[NPI] proposal eliminates substantial value to BB+H provided for in the original settlement, and also provides NPI with significant value without offering any corresponding value to BB+H. Solely as a matter of compromise to resolve this matter, BB+H is willing to accept the MidSouth/NPI proposal with one exception. Rather than covenanting not to sue NPI under the '678 and '979 patents as set forth in your May 22, 2008 letter, BB+H would license NPI under those patents in return for a cross-license from NPI to BB+H under [three specific U.S. Patents held by NPI]. We propose that the licenses be royalty-free (or paid up) and would continue for the lives of the patents. The licenses also would be non-exclusive and non-transferable. Other terms, if any, of the licenses would be discussed after we obtain your response to this proposal.

*June 2008 Letter* (Exhibit C to Doc. #1).

Read in context, the Court finds that the June 2008 Letter does not support a reasonable apprehension by NPI of being sued for patent infringement by BB+H. As already mentioned, at the time NPI acquired MidSouth, BB+H and MidSouth had reached a settlement agreement in the MidSouth suit involving the 979 and 678 patents. However, when NPI acquired MidSouth, NPI sought to add an additional term to the settlement agreement— a covenant that BB+H would not sue NPI for infringement on the same patents. As shown by the June 2008 Letter, BB+H was not interested in binding itself to an additional covenant to the MidSouth suit settlement agreement

without obtaining a corresponding benefit of some type. Instead, BB+H proposed a cross-license between BB+H and NPI in lieu of the covenant. When read in context, BB+H's counterproposal for a cross-license cannot reasonably be seen as a threat of litigation against NPI. Rather, the counterproposal supports BB+H's contention that the letter was an attempt to reach a settlement agreement with MidSouth which provided "sufficient consideration to both parties." *BB+H's Corrected Memorandum in Support of Its Motion to Dismiss* (Doc. #9) at 7.

Because the June 2008 Letter does not support a reasonable apprehension by NPI of being sued for patent infringement by BB+H, the June 2008 Letter does not even meet the pre-*MedImmune* two prong test for establishing an actual controversy. *See, Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993).

### b. *Refusal of Covenant Alone is Legally Insufficient to Create a Controversy*

Second, BB+H correctly states that its refusal to accept a covenant not to sue is not, standing alone, legally sufficient to create an actual, justiciable controversy. *Prasco v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008). "[T]hough a defendant's failure to sign a covenant not to sue is one circumstance to consider in evaluating the totality of the circumstances, it is not sufficient to create an actual controversy-some affirmative actions by the defendant" should also be shown. *Id.*

Accordingly, the Court finds the correspondence from the June 2008 Letter is not sufficient to create a case or controversy between NPI and BB+H. Therefore, the Court will look to NPI's other allegations in support of a case or controversy to determine whether the totality of the circumstances show a substantial controversy of immediate sufficiency and reality between BB+H and NPI.

### B.   Additional Grounds Raised in Response to Motion to Dismiss

In addition to the ground raised in its complaint, Plaintiff presents two additional grounds to support the existence of a case or controversy in response to Defendant's Motion to Dismiss. The two grounds are discussed below.

**1.** July 2008 Email Exchange Regarding MidSouth Advertisement

NPI first points to the July 2008 Emails between attorneys for BB+H and MidSouth. *July 2008 Emails* (Exhibit B to Doc. # 11). The email exchange discusses an advertisement run by MidSouth. A summary of the exchange, with a subject line of "Subject: MidSouth Advertising," is set out below:

> Kenneth Jurek, attorney for BB+H: "Noreen, Attached is a copy of a MidSouth ad that we just ran across. The ad states that MidSouth offers conversions and software for BB+H equipment. Obviously, that assertion is in conflict with our settlement. Please advise me of the steps that MidSouth will take to correct this matter in view of our settlement. To that end, I hope that we will receive a response to our draft documents early next week. I view the documents as a formality and do not see that we will have any problems in getting this done. Best regards, Ken"
>
> Noreen Grant, attorney for MidSouth: "Ken, BB+H misinterprets this ad. Midsouth is not violating the settlement agreement. Are you available to confer tomorrow? I would like to send you my revisions of the proposed agreement and discuss over phone so that we can get things ironed out well before deadline. We can also discuss the ad. Noreen"
>
> Kenneth Jurek: "I am available today (Tuesday) until 1:30. Please send your comments and I will phone you. Ken."
>
> Noreen Grant: "[Inserts phone number] As a reminder, Midsouth doesn't intend to use the accused software at all, hence no need for license agreement."
>
> Jurek: "First that I heard of that."

*July 2008 Emails* (Exhibit B to Doc. #11).

The Court has reviewed the MidSouth advertisement in question. *See, MidSouth Advertisement* (Exhibit A to Doc. #17) at A001. The title of the advertisement reads, "MIDSOUTH TECHNOLOGIES, A NPI COMPANY." The full page ad goes on to discuss the benefits of

MidSouth and the products and services that MidSouth offers. Specifically, the add states, "MidSouth Technologies offers affordable operating system conversions and Intelligent Mail Barcode upgrades for all PTI and Bowe Bell + Howell "J" Series Transports." *Id.*

After reviewing the e-mail exchange and the advertisement itself, the Court is of the opinion that the materials do not amount to a threat by BB+H of litigation against NPI for patent infringement by NPI products. *See, e.g., Glaxo*, 110 F.3d at 1571. The advertisement promotes the product offerings of MidSouth and explicitly notes BB+H compatibility. In light of these facts and the settlement discussions between BB+H and MidSouth, BB+H had a legitimate reason to contact MidSouth/NPI to confirm that MidSouth intended to honor the MidSouth settlement agreement.

Further, after reviewing the email exchange that ensued as a result of the advertisement, the Court sees no allegation of patent infringement against NPI products. The emails are directed to MidSouth and the advertisement promotes MidSouth products. None of the cited materials even address or appear to contemplate NPI's use, whether proper or improper, of the 678 or 979 Patents.

**2.** Defendant's Refusal to Agree to Venue in Dallas

Finally, NPI points to BB+H's refusal in the MidSouth settlement negotiations to agree that any suit by BB+H against MidSouth for selling NPI software that allegedly infringes on the 678 or 979 Patents must be brought in Dallas. Particularly, NPI asserts that, "[t]he fact that BB+H will not agree to venue in Dallas for a patent infringement suit against Midsouth for selling NPI software indicates that its present intention is to sue on this issue in a venue of its choice at a time of its choice." *Plaintiff's Response to Motion to Dismiss* (Doc. #11) at 4. The Court disagrees. NPI's fears, even if they are sincerely held, amount to nothing more than a speculative fear that BB+H might one day investigate whether NPI may be infringing BB+H's patents. *See, Prasco,* 537 F.3d at 1339 (a speculative fear of future harm is insufficient to create an actual controversy). NPI has

pointed to no evidence to suggest that BB+H has performed tests on NPI's products, initiated discussions regarding the possible infringement of NPI's products on BB+H's patents, or otherwise suggested that BB+H believed NPI was infringing on BB+H's patents. *See, Id.* at 1339-40. The mere unwillingness of BB+H to give up, at NPI's request, rights to which it is legally entitled does not, without more, create a reasonable apprehension of suit for infringement. The fact that BB+H refused to prospectively bind itself, as part of a settlement agreement involving MidSouth's product, to a particular forum for any future suit involving NPI's products does not, under these circumstances, create a real, imminent threat of suit by BB+H against NPI.

Because none of the basis alleged by Plaintiff NPI creates an actual controversy standing alone, the Court will now look at the totality of the circumstances.

### D.   Totality of the Circumstances

In considering all the circumstances, NPI has failed to show an imminent threat of patent infringement litigation by BB+H regarding NPI products. The Court therefore lacks subject matter jurisdiction because there is no present case or controversy for the Court to decide.

For a case or controversy to exist the "facts alleged, under all the circumstances, must show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune*, 549 U.S. at 127. Here, the facts raised by NPI are not demonstrative of a substantial, immediate, real controversy.

In totality, the Court finds that NPI's fears are speculative rather than due to an imminent threat. BB+H's refusal to a covenant not to sue and to agree to a Dallas venue are no more than BB+H exercising rights to which it is legally entitled. Though the refusals should be duly considered by the Court in evaluating the totality of the circumstances, BB+H's refusals are not

sufficient to create an actual controversy without other affirmative acts that show an intent or threat to sue NPI based on NPI products. *Prasco v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008). In like manner, the emails exchanged regarding the advertisement do not provide reason for apprehension of such a suit.

After reviewing all of the evidence currently before the Court, the Court is of the opinion that any fear NPI may have of being sued by BB+H stems solely from BB+H's prior litigation with MidSouth regarding MidSouth products. NPI does not, merely as a result of acquiring MidSouth, automatically earn the right to have a Court decide whether NPI products infringe on BB+H's patents. Thus, in considering all the circumstances in this case, the Court does not find a "substantial controversy" between BB+H and NPI that is of such "immediacy and reality that declaratory judgment is warranted." *MedImmune,* 549 U.S. at 127.

V. Conclusion

Considering the totality of the circumstances, Plaintiff has failed to establish a case or controversy under Article III and Fed. R. Civ. P. 12(b)(1). Therefore, the case should be dismissed for lack of subject matter jurisdiction.

When a case is dismissed for lack of subject matter jurisdiction, the dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)).

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion to Dismiss. Accordingly, the Court will enter a final judgment consistent with its findings herein and dismissing the suit without prejudice.

Additionally, the Court hereby **GRANTS** Defendant's Motion for Leave to File a Supplement to Its Motion to Dismiss (Doc. #18) filed March 25, 2009.  Defendant's Supplement to its Motion to Dismiss and Appendix in Support (Docs. #19 and 20) also filed March 25, 2009 is hereby deemed properly filed.

**SO ORDERED** on this **30th** day of **September, 2009**.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**